UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANJELA KHALAFIAN,<br><br>　　　　Plaintiff,<br><br>　　　v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>　　　　Defendant. | NO. CV 11-4570 AGR<br><br><br>MEMORANDUM OPINION AND ORDER |

　　　Plaintiff Anjela Khalafian filed a complaint on June 3, 2011. Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the magistrate judge on July 6, 2011 and March 23, 2012. (Dkt. Nos. 8, 17.) On March 19, 2012, the parties filed a Joint Stipulation ("JS") that addressed the disputed issue. The court took the matter under submission without oral argument.

　　　Having reviewed the entire file, the court affirms the decision of the Commissioner.

**I.**

**PROCEDURAL BACKGROUND**

Khalafian filed applications for disability insurance and supplemental security income benefits on October 17, 2005 and October 31, 2005, respectively. Administrative Record ("AR") 330. The applications were denied initially and upon reconsideration. AR 29-30. Khalafian requested a hearing by an Administrative Law Judge (ALJ). AR 26. On October 31, 2007, the ALJ conducted a hearing at which Khalafian and a vocational expert testified. AR 299-313. On February 14, 2008, the ALJ issued a decision denying benefits. AR 12-20. On August 29, 2008, the Appeals Council denied the request for review. AR 4-6. On October 24, 2008, Khalafian filed an action in this court. On July 8, 2009, the court approved a joint stipulation for voluntary remand to the Commissioner for further proceedings consistent with the terms of the stipulation. AR 336-39. On September 17, 2009, the Appeals Council vacated the final decision of the Commissioner and remanded to an ALJ for further proceedings consistent with the court's order. AR 342. Khalafian filed subsequent concurrent applications for supplemental security income benefits on July 29, 2009, and for disability benefits on November 9, 2009. AR 318.

On January 5, 2011, a different ALJ conducted a hearing at which Khalafian and a vocational expert testified. AR 660-84. On March 14, 2011, the ALJ issued a decision denying benefits. AR 314-30. This action followed.

**II.**

**STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this court reviews the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995) (per curiam); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523. In determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. When the evidence is susceptible to more than one rational interpretation, the court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

## III.
## DISCUSSION

### A. Disability

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003) (citation and quotation marks omitted).

### B. The ALJ's Findings

The ALJ found that Khalafian met the insured status requirements through June 30, 2008. AR 320. Khalafian had the severe impairments of degenerative joint and degenerative disc disease at C5-7 and L3-5; hypertension; obesity; depressive disorder; and dependent personality disorder. *Id.* She had "the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently, and sit, stand, and walk without significant limitation. Mentally, the claimant is limited to simple, repetitive tasks in a work environment without significant public contact. She has no other significant limitations." AR

322-23. Khalafian could perform her past relevant work as a sales attendant and pantry goods maker, as actually performed. AR 329-30.

### C. Past Relevant Work

Khalafian's sole claim is that the ALJ erred in concluding she could return to her past work as a sales assistant and pantry goods maker. She argues the ALJ did not properly consider the opinion of her treating primary care physician, Dr. Janoian, that she would have difficulties in regular work settings with regular and proper conduct.

"At step four of the sequential analysis, the claimant has the burden to prove that he cannot perform [her] prior relevant work 'either as actually performed or as generally performed in the national economy.'" *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1166 (9th Cir. 2008) (citation omitted). "Although the burden of proof lies with the claimant at step four, the ALJ still has a duty to make the requisite factual findings to support his conclusion." *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001). "This is done by looking at the 'residual functional capacity and the physical and mental demands' of the claimant's past relevant work." *Id.* at 844-45; *see also* 20 C.F.R. §§ 404.1520(e), 416.920(e).

On October 25, 2010, Dr. Janoian diagnosed hypertension, depressive disorder mixed with anxiety and maladjustment syndrome, osteoarthritis (L/S, C/S, neck pain), peripheral neuropathy (bilateral hand numbness), hyperlipidemia, and obesity. AR 632. Dr. Janoian reported Khalafian's symptoms as fear of being alone, insomnia, irritability and crying spells. These symptoms escalated because of her grandchild's chromosomal abnormality, which rendered him unable to talk or move his neck or extremities. AR 630. Dr. Janoian observed that Khalafian was tearful throughout her visit and appeared to be emotionally very depressed. AR 632. He advised her to seek professional psychological help, but stated she is financially unable to afford expensive

treatments. AR 632-33. "Emotional instability and poor control over her body movements and her emotions will present with difficulties in regular work settings, where regular attendance and proper conduct is expected." AR 633.

The ALJ stated he could not give Dr. Janoian's opinion much weight for two reasons: (1) "[t]here is no indication that Dr. Janoian has ever evaluated the claimant's psychiatric claims and symptoms using any generally accepted psychiatric method, or has even conducted a mini mental status examination" and (2) "his assessment is not consistent with the reports of Dr. Simonian, the [treating] psychiatrist with the greatest longitudinal understanding of the claimant's psychiatric symptoms, or the state agency examining and evaluating psychiatric consultants." AR 325.

An opinion of a treating physician is given more weight than the opinion of non-treating physicians. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). When a treating physician's opinion is contradicted by another doctor, "the ALJ may not reject this opinion without providing specific and legitimate reasons supported by substantial evidence in the record. This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* at 632 (citations and quotation marks omitted). "When there is conflicting medical evidence, the Secretary must determine credibility and resolve the conflict." *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002) (citation and quotation marks omitted).

The ALJ's first reason for discounting Dr. Janoian's opinion is supported by substantial evidence. An ALJ need not accept the opinion of a treating physician if that opinion is inadequately supported by clinical findings.[1] *Bray v. Comm'r of*

---

[1] Khalafian cites *Sanchez v. Apfel*, 85 F. Supp. 2d 986 (C.D. Cal. 2000), for the proposition that "the fact that there was no objective evidence offered in support of [the] treating physician's assessment of [the] claimant's mental impairment was not [an] adequate basis for rejecting that assessment." JS at 14-15. The court in *Sanchez* merely acknowledged that the diagnostic techniques in

5

*Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009); *Batson v. Comm'r of the SSA*, 359 F.3d 1190, 1995 (9th Cir. 2004) (ALJ may discount treating physician's opinion that "did not have supportive objective evidence"). The medical records from Dr. Janoian's clinic do not indicate any mental status examination or psychological testing. AR 199-236, 258-83, 513-616. In 2006, Khalafian was reported to be anxious once, with no explanation. AR 519. On January 18, 2007, Khalafian was reportedly anxious and agitated with poor judgment. AR 524. Something went wrong with her blood pressure testing machine at home. She was scared and came to the doctor's office. It was noted that Khalafian easily calmed down when reassured about her condition, and that she had a normal stress test in April 2006.[2] Dr. Janoian noted Khalafian was not taking her prescribed medications at the time. *Id.* On November 5, 2007, Khalafian reported that she became anxious after seeing her neighbor drop unconscious, and that she became very anxious each time she checked her blood pressure or came to the doctor's office. AR 545. At that time, Khalafian did not want to take the prescribed Buspar medication and declined psychotherapy. AR 547. In 2008, Khalafian was noted to be anxious once, with an explanation that Khalafian has a sick grandchild with a genetic disease. AR 560. In 2009, Dr. Janoian

---

the field of psychiatry are less tangible than the objective laboratory testing available for many physical illnesses. *Sanchez*, 85 F. Supp. 2d at 992. "'The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation, unless there are other reasons to question the diagnostic technique.'" *Id.* (quoting *Christensen v. Bowen*, 633 F. Supp. 1214, 1220-21 (N.D. Cal. 1986)). In *Sanchez*, the treating records contained a Global Assessment of Functioning score, self-mutilation, hallucinations, and hospitalization after a suicide attempt. *Sanchez*, 85 F. Supp. 2d at 991. By contrast, the ALJ in this case discounted Dr. Janoian's opinion because it did *not* contain psychiatric diagnostic techniques.

[2] The ALJ reviewed the stress test. Khalafian had "good cardiovascular conditioning for age and gender." AR 449. The stress test had a "good outcome." *Id.* Khalafian exercised for 9 minutes on a Bruce protocol and achieved 10 METS. *Id.* The ALJ noted that 10 METS consists of vigorous activity. AR 326.

noted Khalafian was depressed twice, in July and October 2009. Khalafian was crying over her grandchild's genetic disease. AR 586. During the period March 2010-July 2010, Khalafian reported feeling hopeless and depressed over her grandchild's genetic disease. AR 609, 612, 615. In September and November 2010, Khalafian was noted as anxious, without explanation.[3] AR 589, 591.

With respect to the ALJ's second reason, Khalafian argues there is nothing in the record that disputes Dr. Janoian's opinion. JS at 4. The ALJ reviewed the records of Khalafian's treating psychiatrist, Dr. Simonian. AR 323-24. In November 2006, based on his mental status examination, Dr. Simonian found Khalafian had coherent thought process, no looseness of association, constricted affect, anxious mood, and was "somewhat depressed." AR 256. Dr. Simonian found no delusional thinking and no hallucinations. Her intellectual function and memory were average, but her concentration was poor. On Axis V, he assessed her functional ability to be 50%. His diagnosis was panic disorder, depressive disorder, not otherwise specified, and dependent personality features. *Id.* More recently, on December 17, 2010, Dr. Simonian noted that Khalafian was in tears when talking about her grandchild, who has a congenital malformation, has frequent seizures and requires constant care. AR 636-37. Dr. Simonian again diagnosed depressive disorder, not otherwise specified, and dependent personality disorder. AR 637. Her functional ability remained at 50% and her mental status examination was unchanged. *Id.*

The ALJ reviewed the examining psychologist's report in February 2006. AR 323; AR 181-86. Khalafian's thoughts were coherent and her speech was clear, but response time was delayed. Although Khalafian reported that she had concentration and memory problems (AR 182), her testing indicated a grossly intact memory and an adequate attention span with the ability to work without

---

[3] As the ALJ noted, Dr. Janoian treated Khalafian conservatively with medication and exercise. AR 323, 326, 591-92, 613, 615.

distraction on nonverbal tasks. AR 183. Based on the Comprehensive Test of Nonverbal Intelligence, Khalafian's nonverbal intelligence was in the borderline range. AR 184. Dr. Brawer diagnosed complicated bereavement secondary to the death of Khalafian's mother and nonverbal intellectual functioning in the borderline range. "Based on test results and behavioral presentation, the patient would be able [to] learn a simple, repetitive task . . . . Her ability to sustain attention and concentration for extended periods of time may be mildly diminished, due to cognitive and emotional factors. During testing, the patient demonstrated mildly diminished attention, concentration, persistence and pace in completing tasks." AR 185. Dr. Brawer found that Khalafian exhibits depressive/ anxiety symptoms "which may result in mild limitations in ability to effectively manage customary work stresses and persist for a regular workday." *Id.* Khalafian "seems capable of following a routine and organizing herself for basic tasks," but "given her dysphoria and somatic complaints, the patient may have difficulty maintaining the motivation and stamina." *Id.*

The ALJ found the state agency physician's opinion to be consistent with Dr. Brawer's report. In May 2007, Dr. Carlson found that Khalafian was not significantly limited in her ability to understand, remember and carry out simple instructions and work-like procedures. AR 237. She was not significantly limited in her ability to sustain an ordinary routine without special supervision, and her ability to maintain socially appropriate behavior. AR 237-38. She had mild limitation in maintaining concentration, persistence or pace (AR 249), and was moderately limited in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. AR 237. Dr. Carlson found Khalafian capable of performing simple repetitive tasks. AR 239.

The vocational expert testified that a claimant who could perform simple repetitive tasks would not be precluded from returning to her past relevant work. AR 681-82. The ALJ did not err.

## IV.

## **ORDER**

IT IS HEREBY ORDERED that the decision of the Commissioner is affirmed.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: July 10, 2012

_____
ALICIA G. ROSENBERG
United States Magistrate Judge